UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CouponCabin LLC, a Delaware limited liability company,<br><br>                Plaintiff,<br><br>                vs.<br><br>Does, 1 through 10 inclusive,<br><br>                Defendants. | Case No. 2:14-cv-39<br><br>Complaint For:<br>(1) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§ 1030 ET SEQ.;<br>(2) VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. §§ 1201 ET SEQ;<br>(3) BREACH OF CONTRACT;<br>(4) TRESPASS; AND<br>(5) INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE |

## COMPLAINT

Plaintiff CouponCabin LLC ("CouponCabin" or "Plaintiff), by and through its attorneys, brings this Complaint against Defendants Does 1-10 (collectively, the "Doe Defendants") for injunctive relief and damages.  CouponCabin alleges as follows:

## INTRODUCTION

1. CouponCabin is a leading provider of online, printable and grocery coupons for more than 3,000 retailers and merchants, and provides more than 20,000 active and genuine coupons, coupon codes, offers or deals through its website www.couponcabin.com (the "CouponCabin website" or the "Site").

2. CouponCabin has spent a significant amount of time, money, resources and effort sourcing and providing these coupon codes, coupons and discounts to its users.  This process in most cases requires CouponCabin to establish and maintain relationships, and negotiate agreements with online merchants and retailers.  CouponCabin receives a commission from these

1

merchants and retailers in return for directing Internet traffic and potential customers to their websites. CouponCabin has established substantial goodwill in its brand and reputation in the course of its long relationships with many such merchants and retailers, as well as with its users.

3. In early fall 2013, CouponCabin noticed a marked increase in the amount of its unique content appearing on a number of competing websites. This led CouponCabin to conduct an investigation, during which CouponCabin discovered evidence of a large number of spiders, scraping programs and web harvesting programs (collectively referred to herein as "scraping" or "scraping programs") systematically acquiring data from the CouponCabin website.

4. Scraping programs are computer programs that operate to electronically copy, retrieve or otherwise acquire data and information from the websites of others with little or no human interaction. A scraping program is capable of executing instructions at a speed far in excess of what a human can accomplish manually.

5. Since at least early fall 2013, Doe Defendants have employed scraping programs to download, copy and record, and enable the republishing of, CouponCabin's coupons and coupon codes. This practice is explicitly barred by CouponCabin's Terms and Conditions, which prohibits the "systematic retrieval (including by use of data mining, robots, or other extraction tools) of data or other content from the CouponCabin website."

6. The Doe Defendants knowingly and intentionally breached this and other access and use restrictions in CouponCabin's Terms and Conditions, and have circumvented various technical protection barriers employed by CouponCabin. In so doing, they have violated an array of federal and state laws, including the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. (the "CFAA"), and the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq*. (the

2

"DMCA"), and have engaged in unlawful acts of breach of contract, misappropriation, and trespass.

7. CouponCabin brings this action to identify the Doe Defendants and to obtain permanent injunctive relief halting their unlawful conduct. CouponCabin has implemented technical barriers and other measures to protect against the wrongful acts of the Doe Defendants, but the effectiveness of such measures is imperfect. The Doe Defendants' activities, if not enjoined, threaten ongoing and irreparable harm to CouponCabin, including to its reputation and its substantial consumer goodwill. CouponCabin further is entitled to its actual damages, statutory damages, and/or exemplary damages as a result of the Doe Defendants' misconduct.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over this action under 28 U.S. C. §§ 1331 and 1338 because this action alleges violations of federal statutes, including the CFAA and the DMCA. The Court has supplemental jurisdiction over the state law causes of action pleaded herein pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

10. CouponCabin is a Delaware limited liability company with its principal place of business in Whiting, Indiana. CouponCabin LLC is the successor in interest to CouponCabin, Inc., an Illinois corporation.

11. The Doe Defendants are persons and/or entities responsible in whole or in part for the wrongdoing alleged herein. CouponCabin is informed and believes that each of the Doe

Defendants participated in, ratified, endorsed, or was otherwise involved in the acts complained of, and that they have liability for such acts. CouponCabin intends to seek expedited discovery to learn the identity of the Doe Defendants and will amend this Complaint if and when it identifies such persons or entities and/or the scope of their actions.

12. During all relevant times, the Doe Defendants have repeatedly, knowingly, and intentionally accessed CouponCabin's servers without CouponCabin's authorization. While accessing CouponCabin's servers, the Doe Defendants made systematic and continuous contact with this judicial district, and targeted their wrongful acts at CouponCabin.

## FACTS

13. CouponCabin's business is focused on providing coupons and coupon codes over the Internet. CouponCabin spends, and has spent over many years, significant time, money, resources and effort sourcing and providing these coupons and coupon codes to its users.

14. Over many years, CouponCabin has established and maintained relationships with online merchants and retailers.

15. CouponCabin receives a commission from these merchants and retailers in return for directing Internet traffic and potential customers to their websites.

16. CouponCabin has established substantial goodwill in its brand and reputation in the course of its long relationships with many of such merchants and retailers, as well as with its users.

17. The coupons provided through the CouponCabin website are generally composed of an alphanumeric code. A user obtains this code from CouponCabin's website and then enters in the code at the website of a corresponding online retailer.

18.     CouponCabin rigorously tests the coupons provided through the CouponCabin website up to six times a week to ensure they work every time.  CouponCabin has even offered a "Coupon Guarantee" where, subject to certain restrictions, CouponCabin will provide a $25 restraurant.com gift card to any user who encounters an invalid coupon code.  These practices help make CouponCabin content unique and valuable among online coupon providers.

19.     The CouponCabin website is an original copyrighted work.  Among the significant original elements of the CouponCabin website are the distinctive page layout, design, graphical elements, and organization of CouponCabin coupon codes and electronic coupons.

20.     Since 2003, CouponCabin has used and established substantial goodwill in the COUPONCABIN, COUPON CABIN and COUPONCABIN.COM trademarks (the "Marks").  CouponCabin has registered or applied for registration for several trademarks with the United States Patent and Trademark Office in connection with its CouponCabin.com website featuring online discounts and coupons.  CouponCabin is also the owner of numerous other trademarks, copyrights and other intellectual property in connection with its services and its operation of its website.

21.     CouponCabin has expended significant time, money, resources and effort into the design, development and maintenance of the CouponCabin website and into establishing public recognition of the Marks and the CouponCabin website so that the public will identify CouponCabin with a high quality website for online discounts and coupons.

**CouponCabin Terms and Conditions**

22. CouponCabin is available at no cost to the general public, subject to agreement to the CouponCabin Terms and Conditions. A true and correct copy of the CouponCabin Terms and Conditions is attached as Exhibit "A."

23. Users of the CouponCabin website signify their acceptance of the CouponCabin Terms and Conditions by virtue of their access and use of the Site. The CouponCabin Terms and Conditions state that, "[b]y using the Site, you signify your agreement to these terms and conditions and CouponCabin's Privacy Policy."

24. The CouponCabin Terms and Conditions state that users are granted a limited and revocable license to access and use the CouponCabin website in accordance with the CouponCabin Terms and Conditions. The license restrictions state, "[e]xcept as may be explicitly permitted through the Site, you agree not to save, download, cut and paste, sell, license, rent, lease, modify, distribute, copy, reproduce, transmit, publicly display, publicly perform, publish, adapt, edit, catalogue, aggregate, or create derivative works from materials, code or content on or from the Site."

25. The CouponCabin Terms and Conditions also require users to acknowledge and agree that "all content and services available on the Site are property of CouponCabin and its advertisers and licensors and are protected by copyrights, moral rights, trademarks, service marks, patents, trade secrets, and other proprietary rights and laws, in the U.S. and internationally." In addition, the CouponCabin Terms and Conditions further state that "[y]ou may not in any way make commercial or other unauthorized use of (by publication, re-transmission, distribution, performance, caching, cataloguing, aggregating, or otherwise) the Site

Content or other material obtained through the Site, except as permitted by the Copyright Act or other law and as expressly permitted in writing by this Agreement, CouponCabin, or the Site."

26. The CouponCabin Terms and Conditions specifically prohibit the "[s]ystematic retrieval (including by use of data mining, robots, spiders, or other extraction tools) of data or other content from the Site to create or compile, directly or indirectly, a collection, compilation, database or directory[.]"

27. As described further below, the Doe Defendants' conduct is in flagrant violation of each of these provisions.

**CouponCabin's Technology Safeguards and Security Measures to Protect CouponCabin Against Unauthorized Access**

28. CouponCabin diligently works to protect the integrity and security of its network and systems. Among other things, it employs a range of technological safeguards and barriers designed to prevent data scrapers and other wrongdoers from gaining unauthorized access to CouponCabin's website.

29. In response to the data scraping by Doe Defendants, CouponCabin was forced to utilize a third party security provider, Distil Networks Inc. ("Distil"), with whom it has implemented technological safeguards and barriers. Internet traffic intended for CouponCabin is initially routed through Distil servers. Distil uses a proprietary algorithm to analyze traffic patterns and identify behavior indicative of data scraping. Distil helps CouponCabin to identify scraping activity on its site by, among other things, monitoring the number and frequency of incoming requests from a particular IP addresses. If CouponCabin and Distil determine that an IP address exhibits a high-level of data scraping or other suspicious behavior, they subsequently block those IP addresses from accessing the CouponCabin website.

30. As a result of the continuing actions of the Doe Defendants in gaining unauthorized access to the CouponCabin website and engaging in comprehensive scraping activity, CouponCabin has been forced to block the access of all traffic, including legitimate users, emanating from certain cloud computing providers and internet service providers identified as being used particularly heavily by the Doe Defendants to conduct scraping activities.

### The Doe Defendants' Data Scraping Activities

31. By accessing the CouponCabin website, the Doe Defendants agreed to abide by the access and use restrictions in the CouponCabin Terms and Conditions described above.

32. Since at least early fall 2013, the Doe Defendants have knowingly and intentionally engaged in data scraping activities on the CouponCabin website.

33. In response to the Doe Defendants' activities, CouponCabin was forced to take action to prevent the interruption in service to its users, and CouponCabin has expended resources and suffered damages in determining the extent of the invasion of its computer servers by Doe Defendants. Such damages are ongoing and increasing and include the assessment of, and remedial action in response to, the scraping activity of the Doe Defendants.

34. As part of the remedial action CouponCabin was forced to take in order to combat such scraping activity, CouponCabin engaged Distil to help detect and protect against scraping activity and, when necessary, block traffic from accessing the CouponCabin website.

35. Sometime after CouponCabin blocked the Doe Defendants from accessing the CouponCabin website, the Doe Defendants knowingly and intentionally circumvented CouponCabin's security measures in order to continue their data scraping activities.

36. On information and belief, the Doe Defendants have circumvented and continue to circumvent CouponCabin's blockage by conducting their scraping activity in a way specifically designed to evade Distil's monitoring tests described above. For example, on information and belief, the Doe Defendants decreased the frequency and number of successive data requests to avoid triggering CouponCabin's technical safeguards. Further, on information and belief, in conjunction with taking steps to circumvent those safeguards, in order to maintain the previous volume of scraping, the Doe Defendants significantly and dramatically increased the number of IP addresses they used to conduct the scraping activity. In some instances, Doe Defendants used up to 1,100 different IP addresses from a single Internet Service Provider as part of a coordinated scraping program. The action of each IP address exhibited a high level of coordination and sophistication. For example, each IP address was used to scrape a different portion of CouponCabin's website, with little or no overlap among the scraping activity.

37. Through these efforts, the Doe Defendants were able to scrape the entirety of the content, information and data on CouponCabin's website.

38. In conjunction with Distil, CouponCabin conducted an extensive investigation of the Doe Defendants' misconduct and, in the course of its investigation, CouponCabin compiled lists tracking the IP addresses used by the Doe Defendants.

39. As a result of this investigation, CouponCabin determined that the Doe Defendants accessed CouponCabin using servers provided by cloud computing providers and/or internet service providers throughout the United States, specifically including, but not limited to, Ubiquiti Networks, Inc., located in San Jose, California; ColoCrossing, located in Buffalo, New York; SingleHop, LLC, located in Chicago, Illinois; Virpus Networks, Inc., located in Kansas

City, Missouri; Rackspace Hosting, Inc., located in San Antonio, Texas; and Eonix Corporation, located in Henderson, Nevada.

40. The Doe Defendants used these servers as a launching pad from which to scrape data from CouponCabin's website.

41. Upon information and belief, the use of multiple companies operating servers in different states was specifically designed by the Doe Defendants to conceal their identity and bypass the technical safeguards CouponCabin used to prohibit their unlawful activity.

42. CouponCabin expects to be able to identify the Doe Defendants through the service of third-party discovery on the owners or operators of the servers the Doe Defendants used to scrape the CouponCabin website.

## Doe Defendants Have Caused and Threaten Ongoing and Irreparable Injury to CouponCabin

43. By engaging in the data scraping incidents described above, the Doe Defendants have caused, and if not halted will continue to cause, ongoing and irreparable harm to CouponCabin, in a variety of ways.

44. The Doe Defendants' misconduct has imposed significant strains on CouponCabin's servers, including through the use of automated technologies to copy, repeatedly, CouponCabin's coupon codes and electronic coupons.

45. The automated, high-speed scraping activity caused by the Doe Defendants has impaired CouponCabin's ability to dedicate its servers to the activities of legitimate CouponCabin users.

46. The strain that Doe Defendants' unlawful activity has imposed on the servers and computer system of CouponCabin has increased the length of time it takes CouponCabin's

website to respond to page requests by 300%. The increased response time degrades the user experience of legitimate users of the CouponCabin website and discourages longer and repeat visits of the Site.

47. The magnitude of the scraping program of the Doe Defendants impairs the proper functioning of the CouponCabin website by disrupting the algorithm by which the content management system of the CouponCabin website runs. The content management system underlying the CouponCabin website determines where and when various coupons and coupon codes appear on the Site. The artificial interaction of the scraping program with the CouponCabin computer system produces false signals that are read by the algorithm, resulting in in the misplacement of content and suboptimal functioning of the CouponCabin website. This malfunctioning of the content management system degrades the user experience of legitimate users of the CouponCabin website and diminishes the revenue generated by the Site.

48. CouponCabin users expect quality coupons that are unique to or available exclusively through the CouponCabin website. The unauthorized distribution of CouponCabin's coupons by the Doe Defendants degrades the value of the CouponCabin service and causes irreparable harm to the value of its consumer goodwill and trust, which CouponCabin has worked hard for years to earn and maintain.

49. By re-publishing or selling to re-publishers CouponCabin coupon codes and electronic coupons, the Doe Defendants dilute the uniqueness of that content, which negatively affects CouponCabin's placement and ranking in internet search engines. Further, the re-publishing of content may result in penalties imposed on CouponCabin by internet search engines. Such negative impact to CouponCabin's search engine placement and/or penalties significantly harm CouponCabin's traffic and resulting revenue.

50. On information and belief, the Doe Defendants, who have expended none of their own time, money, resources or effort into establishing merchant relationships or sourcing these coupons and coupon codes, have engaged in their scraping activities in an attempt to establish competing coupon websites, divert web traffic, sell such data and/or otherwise abscond or enrich themselves with commissions and referral fees that would otherwise be paid to CouponCabin.

51. In the course of its commercial relationships and negotiations with merchants, CouponCabin points to the volume of traffic it is able to direct towards participating merchants. By using CouponCabin's own coupons to divert traffic away from CouponCabin's website, Doe Defendants hamper CouponCabin's ability to negotiate with merchants for more favorable coupons for its users and more favorable deal terms for CouponCabin.

52. As a direct result of the Doe Defendants' scraping activities, CouponCabin has suffered harm to its computer systems, and has expended significant human, financial, and technological resources, including hundreds of hours of employee time, investigating and responding to and combatting the Doe Defendants' unlawful activities, at a cost to CouponCabin of more than $5,000.

**FIRST CLAIM, FOR VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 ET SEQ.**

53. CouponCabin realleges and incorporates by reference all of the preceding paragraphs, 1-52.

54. CouponCabin's computers and servers are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. §1030(e)(2).

55.     On information and belief, the Doe Defendants knowingly and intentionally accessed CouponCabin's computers and servers without authorization or in excess of the authorization permitted under CouponCabin's Terms and Conditions and in circumvention of the technical barriers described in paragraphs 28-29, including the Distil scraping monitoring service, which barriers CouponCabin has employed to protect CouponCabin's computers and servers from unauthorized access.

56.     On information and belief, after gaining unauthorized access to CouponCabin's computers and servers, the Doe Defendants obtained and used valuable information from CouponCabin's protected computers and servers in transactions involving interstate or foreign communications in violation of 18 U.S.C. § 1030(a)(2).  This information includes, among other things, coupon codes, electronic coupons, and discount offers, and this use includes, among other things, distributing that content to others.

57.     The Doe Defendants knowingly, willfully, and with an intent to defraud, accessed CouponCabin's computers and servers without authorization or in excess of authorization and obtained valuable information from CouponCabin's computers and servers that, on information and belief, the Doe Defendants used to obtain something of value in violation of 18 U.S. C. § 1030(a)(4).

58.     CouponCabin has suffered damage and loss by reason of these violations, including, without limitation, harm to CouponCabin's computer systems, expenses associated with being forced to investigate and respond to the unauthorized access and abuse of its computers and servers, and other losses and damage in an amount to be proven at trial, in excess of $5,000 aggregated over a one year period.  The Doe Defendants' actions also imposed

significant strain and impairment on CouponCabin's computer systems, inhibiting its ability to conduct business and respond to legitimate user requests.

59. In addition, CouponCabin has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by the Doe Defendants. Accordingly, CouponCabin is entitled to injunctive relief.

## **SECOND CLAIM, FOR VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201 ET SEQ.**

60. CouponCabin realleges and incorporates by reference all of the preceding paragraphs. 1-59.

61. CouponCabin employs various layers of technological protections, including the Distil scraping monitoring service, to protect CouponCabin's computers and servers from unauthorized access. These technological protection measures help control and restrict access to the copyrighted materials on CouponCabin's servers, including the CouponCabin website, coupon codes, electronic coupons, and discount offers, and protect CouponCabin's exclusive rights in these copyrighted materials.

62. Despite CouponCabin's best efforts to protect the CouponCabin website from the Doe Defendants' unauthorized access, the Doe Defendants circumvented CouponCabin's technological safeguards and gained unauthorized access to CouponCabin's copyrighted materials, including without limitation the copyrighted CouponCabin website, in violation of 17 U.S.C. § 1201(a).

63. As a result of the Doe Defendants' wrongful acts, CouponCabin has suffered and will continue to suffer damages to be proven at trial. CouponCabin is further entitled to all

profits attributable to the Doe Defendants' wrongful acts.  Alternatively, upon its election at any time before final judgment is entered, CouponCabin is entitled to recover statutory damages from the Doe Defendants pursuant to 17 U.S.C. § 1203 for each act of circumvention committed by the Doe Defendants.

64. The Doe Defendants' circumventions also have caused CouponCabin irreparable harm.  Unless restrained and enjoined, the Doe Defendants will continue to commit such acts.  CouponCabin's remedies at law are not adequate to compensate for these inflicted and threatened injuries, and thus CouponCabin is entitled to injunctive relief as provided by 17 U.S.C. § 1203.

### THIRD CLAIM, FOR BREACH OF CONTRACT

65. CouponCabin realleges and incorporates by reference all of the preceding paragraphs, 1-64.

66. Use of the CouponCabin website and use of CouponCabin services are governed by and subject to the CouponCabin Terms and Conditions.

67. CouponCabin users are presented with the CouponCabin Terms and Conditions and must agree to the CouponCabin Terms and Conditions in order to access the CouponCabin website.

68. At all relevant times, CouponCabin also prominently displayed a link to the CouponCabin Terms and Conditions on CouponCabin's homepage.

69. The Doe Defendants affirmatively accepted and agreed to the CouponCabin Terms and Conditions to access the CouponCabin coupons, and thereafter scraped data from CouponCabin's website in violation of those Terms and Conditions.

70. The CouponCabin Terms and Conditions are enforceable and binding on the Doe Defendants.

71. The Doe Defendants repeatedly accessed the CouponCabin website with knowledge of the CouponCabin Terms and Conditions and all of its prohibitions.  Despite their knowledge of the CouponCabin Terms and Conditions and their prohibitions, and their agreement thereto, the Doe Defendants accessed and continue to access the CouponCabin website to, among other things, scrape, crawl, or use other automated technology or software to gain access to the CouponCabin website without the consent of CouponCabin.

72. CouponCabin has been unable to contact the Doe Defendants to demand that they cease and desist their data scraping and other CouponCabin-related activities because CouponCabin does not know the identifies of the Doe Defendants.

73. The Doe Defendants' actions, as described above, have willfully, repeatedly, and systematically breached the CouponCabin Terms and Conditions.

74. CouponCabin has performed all conditions, covenants, and promises required of it in accordance with the CouponCabin Terms and Conditions.

75. The Doe Defendants' conduct has damaged CouponCabin, and caused and continues to cause irreparable harm and injury to CouponCabin.

76. CouponCabin is entitled to injunctive relief, compensatory damages, and/or other equitable relief.

## **FOURTH CLAIM, FOR TRESPASS**

77. CouponCabin realleges and incorporates by reference all of the preceding paragraphs, 1-76.

78. The Doe Defendants intentionally, and without authorization, accessed and interacted with CouponCabin's website, computer systems and servers.

79. The Doe Defendants' access to the CouponCabin website and the information contained therein required the Doe Defendants to abide by the CouponCabin Terms and Conditions.  By violating the terms of the Terms and Conditions, and CouponCabin's express efforts to combat their activities, the Doe Defendants unlawfully gained access to and interfered and intermeddled with CouponCabin, its website, computer systems, and its servers.

80. The Doe Defendants' unauthorized interference with and access to CouponCabin, its website, computer systems, and its servers, among other harms, reduces CouponCabin's capacity to service its users because it occupies and uses CouponCabin's resources.

81. The Doe Defendants' conduct constitutes trespass that has harmed and will continue to harm CouponCabin.  As a result, CouponCabin has been and will continue to be damaged.

82. CouponCabin has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by the Doe Defendants. Accordingly, CouponCabin is entitled to injunctive relief.

## **FIFTH CLAIM, FOR INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**

83. CouponCabin realleges and incorporates by reference all of the preceding paragraphs, 1-82.

84. CouponCabin has established relationships with numerous online merchants that utilize CouponCabin's services to make available on the CouponCabin website valid and

authentic coupon codes, electronic coupons, and discount offers. In exchange for directing traffic to merchant websites, CouponCabin receives compensation, commissions and referral fees based on the amount of traffic and the number of purchases made using the coupons on the CouponCabin website.

85. At all relevant times, the Doe Defendants knew of these relationships.

86. The Doe Defendants wrongfully and tortiously interfered with CouponCabin's relationships with the merchants by republishing CouponCabin codes and diverting traffic from the CouponCabin website to competing coupon websites.

87. The re-publishing of coupons and coupon codes scraped from the CouponCabin website harms CouponCabin's placement and ranking in internet search engines, materially diminishing traffic to the Site and resulting revenue to CouponCabin.

88. Doe Defendants knew that their actions would deprive CouponCabin of commissions, referral fees and other compensation that would have been paid by those merchants to CouponCabin.

89. The actions of Doe Defendants were without justification.

90. CouponCabin has been and will continue to be damaged as the result of the Doe Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, CouponCabin prays that judgment be entered in its favor and against the Doe Defendants, as follows:

1. A preliminary injunction and permanent injunction enjoining and restraining all of the Doe Defendants, their employees, representatives, agents, and all persons or entities acting in concert with them, during the pendency of this action and

        thereafter perpetually from accessing or using CouponCabin's website for any commercial purpose whatsoever;

2. An order requiring Doe Defendants to destroy all documents, data, and other items, electronic or otherwise, in their possession, custody or control that were wrongfully copied from CouponCabin's website

3. An award to CouponCabin of restitution and damages, including, but not limited to, compensatory, statutory, treble damages and punitive damages, as permitted by law;

4. An award to CouponCabin of its costs of suit, including, but not limited to, reasonable attorney's fees, as permitted by law; and

5. Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

CouponCabin hereby demands a jury trial of all issues in the above-captions action that are triable to a jury.

DATED: February 7, 2014

                                      By: /s/Mark R. Waterfill
                                      Mark R. Waterfill, Atty. No. 10935-49
                                      Jeff Kosc, Atty. No. 26234-49
                                      BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
                                      One American Square, Suite 2300
                                      Indianapolis, Indiana 46282-0018
                                      Tel: 317.632.3232
                                      Fax: 317.632.2962
                                      Email: mwaterfill@Beneschlaw.com
                                      jkosc@beneschlaw.com

                                      Tanya L. Forsheit

M. Scott Koller
*(Pro hac vice motions forthcoming)*
INFOLAWGROUP LLP
1500 Rosecrans Ave., Suite 500
Manhattan Beach, CA 90266
Tel: 310.706.4121
Mobile: 310.594.4627
Fax: 310.706.4007
Email: tforsheit@infolawgroup.com
Email: skoller@infolawgroup.com

*Attorneys for Plaintiff CouponCabin LLC*