# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| COUPONCABIN, LLC, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:14-CV-39-TLS-PRC |
| | ) |
| SAVINGS.COM, INC., *et al.*, | ) |
|     Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on a Motion of Wipro Ltd. to Quash Subpoena and for Entry of Protective Order [DE 116], filed by nonparty Wipro, Ltd. ("Wipro") on October 12, 2016. Briefing on the motion was stayed to allow the parties to resolve the dispute without court intervention, which they were unable to do. Plaintiff CouponCabin, LLC ("CouponCabin") filed a response on January 26, 2017, and Wipro a reply on January 27, 2017.

In this litigation, CouponCabin alleges that the Defendants "scraped" information from CouponCabin's public website by copying content displayed therein. CouponCabin alleges, among other things, that these alleged activities violate the federal Computer Fraud and Abuse Act and the Digital Millennium Copyright Act. The movant, Wipro. is not a defendant in this action.

On August 25, 2016, CouponCabin sent a "cease and desist" letter to Wipro with the subject line "Unauthorized Access and Use of CouponCabin's Website and Property." (ECF 116-2, p. 2). The letter identifies the instant litigation, which it calls the Harvester Lawsuit, and describes the nature of CouponCabin's business and the resources CouponCabin invests in establishing and maintaining relationships with online merchants and retailers to obtain the coupon content on its website. In the letter, CouponCabin represents that it protects and safeguards its website from unlawful access, attacks, content theft, and misuse.

The letter then represents that, in the course of its investigation in this litigation, "CouponCabin has obtained evidence that [Wipro] may have engaged in a substantial level of data harvesting and scraping from the CouponCabin Website. This conduct is unlawful, unauthorized, and in violation of the Terms and Conditions governing the use of the CouponCabin Website and its content." (*Id*. at p. 3). The letter further provides:

> CouponCabin has evidence that Wipro has utilized various methods to gain unauthorized entry to the CouponCabin website and to engage in widespread copying, scraping and harvesting of data and Coupon Content, in direct violation of CouponCabin's Terms and Conditions. After discovering the unauthorized activity, CouponCabin instituted an IP block of those Internet Protocol addresses known or suspected to be used or controlled by Wipro, in order to prevent Wipro from accessing the CouponCabin Website. Following this IP block, Wipro agents made a concerted effort to circumvent the block through the use of VPNs and other IP-masking methods. Such nefarious conduct not only reveals the improper objectives of Wipro but also violates the Computer Fraud and Abuse Act . . . and applicable state law.

*Id*.

The letter accuses Wipro of taking these actions on behalf of a client seeking to misappropriate CouponCabin content. The letter warns that CouponCabin intended to serve a subpoena on Wipro. The letter concludes with a demand that, among other actions, "Wipro immediately (i) cease and terminate any scraping, harvesting or other misappropriation of Coupon Content," and "(ii) cease and desist from accessing the CouponCabin Website at all in the future." *Id*. at pp.3-4.

On September 8, 2016, CouponCabin served a subpoena duces tecum on Wipro, asking for the following:

1. Documents or electronically stored information sufficient to identify the (a) name, (b) mailing address, (c) telephone number and (d) email address of every person or entity on whose behalf Wipro or its agents visited

2

> CouponCabin.com or made requests of pages or data from CouponCabin.com web pages since January 1, 2015.
>
> 2. Where Wipro or its agents visited CouponCabin.com or made requests of pages or data from CouponCabin.com web pages pursuant to or as part of performing Wipro's obligations under a contract with a person or entity, (i) identify the (a) name, (b) mailing address, (c) telephone number and (d) email address of each such person or entity and (ii) provide copies of such contracts.

(ECF 116-1, Ex. A, p. 6).

Pursuant to Federal Rule of Civil Procedure 45(a)(1)(A)(iii), a party may serve a subpoena commanding a nonparty to produce designated documents. Rule 45(d)(3)(B) permits a court to quash a subpoena based on a timely motion if the subpoena requires the disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). As for relevance, "[t]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008). The broad scope of discovery permits a party to seek information

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

In the instant motion to quash, Wipro argues that CouponCabin's subpoena is an improper attempt to obtain information from Wipro, a nonparty, in order to support a lawsuit against Wipro

and that Wipro would be subject to an undue burden if required to respond to the overbroad subpoena.

As to relevance, Wipro argues that the nonparty subpoena is being used for the improper purpose of obtaining factual support for a claim that CouponCabin hopes to bring against Wipro in the future. Wipro contends that the information requested in the subpoena is not being sought in furtherance of CouponCabin's claims against the Defendants in this lawsuit for allegedly scraping data as CouponCabin has not suggested or otherwise indicated that Wipro has any connection to any of the Defendants and the subpoena does not ask for information relative to any of the named Defendants. Rather, the subpoena asks for the name, address, telephone number, and email address of each and every person at Wipro who has ever accessed the CouponCabin.com website or made requests for data from CouponCabin.com's web pages since January 1, 2015. Wipro argues that such information is sought to support a claim against Wipro as threatened in CouponCabin's August 25, 2016 letter. Wipro also argues that the 20-month period beginning January 1, 2015, has no bearing on this litigation because the First Amended Complaint alleges that Defendants have been scraping CouponCabin.com since Fall 2013.

In its response brief, CouponCabin asserts that it has two bases for the information requested in the subpoena—first, to determine the extent of the potentially unlawful conduct of the named Defendants and, second, to identify potentially other bad actors.

As to the first, CouponCabin explains that, because of the unknown nature of the Defendants' possible interactions with Wipro, the non-party subpoena is necessary and relevant to uncover what contact, if any, Defendants had with Wipro. But CouponCabin offers no basis for believing that the Defendants have any association with Wipro. Moreover, in the course of the

4

parties' attempts to resolve this dispute without court intervention, Wipro conducted a search of its records to determine if any of the Defendants in this litigation were currently or had ever been a client of Wipro. And, Wipro determined that none of the Defendants in this lawsuit were currently or had ever been clients of Wipro and communicated this information to CouponCabin on December 13, 2016, and December 16, 2016. Yet, CouponCabin does not acknowledge this information in its January 17, 2017 response brief or explain how the discovery sought by the subpoena is relevant in light of this representation. Thus, it appears that Wipro does not have information that will further this primary stated purpose of Plaintiff in serving the subpoena.

As for the second stated purpose, to "determine the identity of any new bad actors," CouponCabin acknowledges in its response brief that it believes that Wipro may have "scraped" from CouponCabin.com, potentially on behalf of a client served by Wipro. Despite CouponCabin's assertion in its response brief that it "has little interest for involving Wipro in the pending litigation" and its protestation that Wipro is incorrect in accusing it of hoping to bring litigation against Wipro, CouponCabin specifically contends that the information sought is likely to lead to potential new defendants. In its August 25, 2016 letter, CouponCabin threatened Wipro with litigation. In other words, CouponCabin is using the discovery process in this litigation to conduct pre-litigation discovery to determine whether it has a basis to sue any other parties. As noted above, Wipro has represented to CouponCabin and the Court that it has no connection to any party in this case.

Finally, if CouponCabin believes that the Defendants in the instant lawsuit have been engaging Wipro to conduct "scraping" for them, then CouponCabin can serve discovery on those parties in this litigation to request documents evidencing communications with Wipro.

Discovery sought in the nonparty subpoena served on Wipro is not relevant to the claims in this litigation. Thus, the Court need not address Wipro's second argument that the discovery imposes an undue burden.

Based on the foregoing, the Court hereby **GRANTS** the Motion of Wipro Ltd. to Quash Subpoena and for Entry of Protective Order [DE 116] and **QUASHES** the subpoena served by CouponCabin on Wipro.

SO ORDERED this 10th day of February, 2017.

> s/ Paul R. Cherry
> MAGISTRATE JUDGE PAUL R. CHERRY
> UNITED STATES DISTRICT COURT